**STATE of Indiana, Appellant (Plaintiff Below),**

v.

**Ted PEASE, Appellee (Defendant Below).**

No. 82A01–8804–CR–129.

Court of Appeals of Indiana, First District.

Dec. 22, 1988.

Linley E. Pearson, Atty. Gen., Donald B. Kite, Sr., Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellant.

Robert Canada, Evansville, for appellee.

ROBERTSON, Judge.

The State of Indiana appeals the granting of defendant Ted Pease's motion to suppress. We affirm.

## I.

Before addressing the substantive issues involved in this appeal, we believe it necessary to consider the propriety of the State's appeal. Both parties have argued the question of appellate jurisdiction, believing the issue to have been raised by the State's decision to dismiss the action before appealing, rather than to seek an interlocutory appeal. Pease argues, in essence, that because the State allegedly lacks the authority to appeal, we have no jurisdiction.

Our courts have distinguished the authority of the state's appellate courts to hear appeals from that of the State to prosecute them. The ability of this court to exercise appellate jurisdiction is not dependent upon legislative enactment but devolves instead upon this court by virtue of the authority vested in the state Supreme Court to specify by rule the terms and conditions of such jurisdiction. Ind. Constitution, Art. 7, § 6. *See, also, State v. Palmer* (1979), 270 Ind. 493, 386 N.E.2d 946. Ind. Rules of Procedure, Appellate Rule 4(A) enumerates the types of cases over which the Supreme Court has exclusive jurisdiction. A.R. 4(B) provides that "[i]n all other cases, appeals shall be taken to the Court of Appeals...." Hence, because this appeal does not involve a matter over which the Supreme Court enjoys exclusive jurisdiction, this court may exercise jurisdiction pursuant to A.R. 4(B).

However, the right of the State to appeal in any criminal action is statutory. Unless there is a specific grant of authority by the legislature, the State cannot appeal. *State v. Hicks* (1983), Ind., 453 N.E.2d 1014, 1016; *State v. Harner* (1983), Ind., 450 N.E.2d 1005. The State's statutory right of appeal is in contravention of common law principles and will, therefore, be strictly construed. *State v. Holland* (1980), 273 Ind. 284, 403 N.E.2d 832, 833.

IND.CODE 35-38-4-2 (1983) permits an appeal to the Court of Appeals:

(1) [f]rom an order granting a motion to dismiss an indictment or information.

\* \* \* \* \* \*

(5) [f]rom an order granting a motion to suppress evidence, if the ultimate effect of the order is to preclude further prosecution. . . .

Prior to the enactment of I.C. 35–38–4–2(5) no statutory authority existed for appeals from suppression orders by the State to this court, whether the appeal be interlocutory or otherwise. *State v. Nichols* (1980), 274 Ind. 445, 412 N.E.2d 756. However, an appeal of a suppression order, based upon the alleged unconstitutionality of the search provision in I.C. 9–1–2–3(b) (1973) was held to be appealable to the Indiana Supreme Court pursuant to A.R. 4(A)(8). *State v. Tindell* (1980), 272 Ind. 479, 399 N.E.2d 746. There, although interlocutory in form, the appeal was deemed to be taken from a final judgment of dismissal as the preclusionary effect of the order rendered it "tantamount to a dismissal of the action." *Id.* at 747, 399 N.E.2d 746.

The language of I.C. 35–38–4–2(5) tracks the language of the *Tindell* opinion; since its enactment, this court has construed I.C. 35–38–4–2(5) as permitting appeals in those cases where the suppression order has the effect of precluding further prosecution by the State. Such suppression orders, when interlocutory, are "tantamount to a dismissal of the action and therefore appealable as a final judgment under subsection (5) of the statute." *State v. Williams* (1983), Ind.App., 445 N.E.2d 582, 584. *See, e.g. State v. Watkins* (1987), Ind.App., 515 N.E. 2d 1152, n. 1; *State v. Blake* (1984), Ind. App., 468 N.E.2d 548, 550.

■ The State charged Pease with class D felony possession of a schedule II controlled substance (amphetamine). The State acquired its evidence of this offense as a consequence of the illegal search alleged in Pease's motion to suppress. When the trial court ordered that the fruits of the search of Pease's person were to be excluded, the State lost its ability to prosecute

and dismissed the information the same day.

The order granting Pease's motion to suppress has become a final order by virtue of the action's dismissal. I.C. 35–38–4–2(5) authorizes appeals from orders suppressing evidence when the effect is to preclude further prosecution. We are unaware of any principled basis for distinguishing between final orders and interlocutory orders deemed final when both have the effect of precluding further prosecution. Consequently, we hold that I.C. 35–38–4–2(5) permits the State to appeal the suppression order at issue here.[1]

## II.

The State argues in this appeal that the trial court erred in granting Pease's motion to suppress because both the stop of Pease's vehicle and the pat-down of Pease's person comported with the requirements of the fourth and fourteenth amendments to the U.S. Constitution.[2] These are the facts.[3]

On November 7, 1987, Officer Whitlow of the Evansville Police Department encountered Pease's vehicle as the officer was traveling westbound on Covert Avenue at about 4:20 p.m. As Pease's vehicle approached from the east, Whitlow observed that the vehicle's windshield was badly cracked. He did not recognize Pease. Officer Whitlow decided to stop the vehicle.

After the cars came to a stop, the officer asked Pease to exit the vehicle and produce his driver's license because it was "standard procedure on a car stop to ascertain the identity of the driver and to make sure the driver has a valid driver's license." Pease complied. Officer Whitlow took Pease to his police vehicle to run a driver's license check and to write a citation. Before placing Pease in the rear of his vehicle, Officer Whitlow conducted a pat-down search of Pease's outer clothing for

---

1. A dismissal by the State occurring prior to the attachment of jeopardy does not bar the State from refiling identical charges; therefore, the dismissal here is without prejudice. *See e.g., Burdine v. State* (1987), Ind., 515 N.E.2d 1085, 1089; I.C. 35–34–1–13(b).

2. Neither party addresses its argument to the provisions of the Indiana Constitution.

3. The trial court's ruling was general in nature.

weapons and felt a hard object in Pease's upper shirt pocket. He asked Pease what it was. Pease reached for the pocket, turned and ran. He drew the object from his pocket and threw it. Officer Whitlow subsequently recovered the object and reported it to be amphetamines. Pease was charged with knowingly possessing a schedule II controlled substance. The Indiana "Information and Summons" completed on the evening of the arrest charged Pease with operating an "unsafe vehicle." The citation was apparently never filed.

■ Under the fourth amendment, a police officer who lacks probable cause but whose observations lead him reasonably to suspect that a particular person is committing a crime may detain that person briefly in order to investigate the circumstances that provoke suspicion. *U.S. v. Brignoni-Ponce* (1975), 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607. *Accord, Poling v. State* (1987), Ind., 515 N.E.2d 1074. Although stopping a car and detaining its occupant constitutes a seizure within the meaning of the fourth amendment, the governmental interest in investigating an officer's reasonable suspicion, based on specific and articulable facts, may outweigh the fourth amendment interest of the occupant in remaining secure from the intrusion. *U.S. v. Hensley* (1985), 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604. Since the State has a legitimate interest in insuring that motor vehicles are fit for safe operation, *Delaware v. Prouse* (1979), 440 U.S. 648, 659, 99 S.Ct. 1391, 1399, 59 L.Ed.2d 660, we must consider whether the situation presented here is one in which there is at least articulable and reasonable suspicion that either the vehicle or its occupant was properly subject to a seizure for a violation of law.

Officer Whitlow testified he stopped Pease's vehicle because he observed the vehicle had a badly cracked windshield, and issued a citation because he determined the vehicle to be unsafe. Two sections of the Indiana Code prohibit the operation of an unsafe vehicle on a public highway. I.C. 9–4–1–126 prohibits driving on any highway any motor vehicle unless the vehicle's equipment is in good working order as required by statute "*and* said vehicle is in such safe mechanical condition as not to endanger the driver ... or any person upon the highway." A person who violates this section commits a class C infraction. I.C. 9–4–1–127.1(b). I.C. 9–8–6–2(a) (1981) also makes it a class C infraction for a person to operate on any highway

> any vehicle ... which is in such an unsafe condition as to endanger any person, which does not contain those parts or is not at all times equipped with such lamps and other equipment in proper condition and adjustment as required in this chapter, *or* which is equipped in any manner in violation of this chapter.... (Emphasis supplied.)

By use of the conjunction "or" in I.C. 9–8–6–2(a), the legislature made clear that an operator can commit an infraction pursuant to this section by driving a vehicle which is in any of three alternative conditions. Consequently, even though the legislature did not expressly prohibit the operation of a motor vehicle with a broken or cracked windshield as Pease argues, if a vehicle is operated in such an unsafe condition, by virtue of the condition of its windshield, as to endanger the driver or any other person, a violation has occurred. The act prohibited by this portion of the statute is therefore not dependent upon the terms of any other section of the act for definition. The issue then is whether Officer Whitlow had a reasonable suspicion, based upon specific and articulable facts, that Pease's vehicle was in the proscribed dangerous condition.

■ The record contains three photographs of Pease's vehicle, taken after his arrest. Officer Whitlow testified that the photographs accurately portrayed the condition of the vehicle at the time he ordered Pease to stop. Exhibit one is a snapshot of the windshield taken from the passenger's side at a distance of about two to three feet. Exhibit two shows about two-third's of Pease's 1976 Oldsmobile from the front passenger's side. The distance appears to be about a foot or so nearer than a passing car. From this perspective, one observes one deep break in the windshield running diagonally across the passenger's side of the windshield from the hood to the roof.

The main break is comprised of three or four long, parallel cracks with a star-shaped focal point at each end. Each focal point has multiple cracks radiating from it, the smaller being approximately four to five inches in diameter. The third photograph appears to have been taken from the rear of the driver's side from the perspective of a driver of a second vehicle safety stopped behind Pease's vehicle. At this angle, damage to the passenger side of the windshield appears more extensive, with many focal points and several large cracks, suggesting the possibility of chipping glass and obscured vision through the passenger's side.

We have described the windshield breakage in detail to demonstrate why Pease's windshield cannot be referred to simply as "cracked." Exhibits two and three convince us that Officer Whitlow acted reasonably in stopping Pease to investigate further the extent of the damage; they provide an objective basis for evaluating the officer's suspicion the vehicle was being operated in an unsafe and endangering condition.

Exhibit one, which was taken at close range, approximates what the officer observed upon further inspection. In our view, exhibit one confirms the damage was sufficiently extensive to lead a reasonably prudent person to believe that the vehicle, when driven, created a dangerous situation for those entering the area where the driver's peripheral vision is obscured by the breakage. While the damage may not wholly block the driver's view, the numerous cracks and their location would make it difficult at best to discern objects in that area. One can envision probable danger to pedestrians crossing in front of the vehicle and to occupants of vehicles merging from the driver's right or changing lanes. As the State points out, the officer need not have been convinced beyond a reasonable doubt that the vehicle endangered others; rather, to justify the stop, he must have a reasonable suspicion. To warrant the citation, the officer must possess knowledge of facts and circumstances which would cause a person of reasonable caution to conclude that Pease was probably violating the unsafe vehicle statute in his presence. *See Gee v. State* (1984), Ind., 471 N.E.2d 1115, 1117.

### III.

Although Pease chose to argue only the propriety of the stop at the evidentiary hearing on his motion to suppress, he alleged in his written motion that the frisk which followed the stop was also constitutionally impermissible. Since the illegality of the search of Pease's person might have been the basis of the trial court's ruling, we will address the search as well.

■ Law enforcement officers may, consistent with the fourth amendment, ask the driver of a vehicle lawfully detained to get out of the car. *Pennsylvania v. Mimms* (1977), 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed. 2d 331. Such a precautionary measure reduces the likelihood that the officer will be the victim of an assault or sustain accidental injury from passing traffic. Thus, an officer acts reasonably within the meaning of the fourth amendment when he or she asks the driver of the vehicle to step out of the car and off onto the shoulder of the road where the investigation can be pursued with greater safety. *Id.* at 111–112, 98 S.Ct. at 333–34.

■ This is not to suggest, however, that an officer, may "frisk" the occupants of any car stopped for a traffic violation once they leave the car. *See, id.* at 111, n. 3, 98 S.Ct. at 332, n. 3. Under the doctrine initiated in *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, an individual stopped may not be frisked or patted down for weapons, unless the officer holds a reasonable belief that the particular individual is armed and dangerous. *Ybarra v. Illinois* (1979), 444 U.S. 85, 94, 100 S.Ct. 338, 343, 62 L.Ed.2d 238. *Terry* does not authorize a generalized, cursory search for weapons "or a search aimed at anything but weapons." *Id.* at 94–95, 100 S.Ct. at 343.

■ The record in this case dispels any notion that the search of Pease was supported by a particularized belief that Pease

was armed and presently dangerous. To the contrary, Officer Whitlow testified he patted down Pease because it was standard procedure for him to do so before placing any individual in his squad car. Officer Whitlow did not recognize Pease until he discovered the amphetamines; hence, Pease was not an individual with a known propensity for violence or criminal activity. Neither did Pease make any gestures indicative of an intent to assault nor act as if he possessed a weapon.

To the extent the State seeks to justify the frisk based upon generalized concerns for the officer's safety, we would note that Officer Whitlow intended to place Pease in the rear of the police car while he ran a driver's license check and issued the citation. That course cannot be said to be the least restrictive means reasonably available for effectuating the investigation, *Florida v. Royer* (1983), 460 U.S. 491, 501, 103 S.Ct. 1319, 1326, 75 L.Ed.2d 229, as Pease could have waited in his car or beside the road until the check was complete, minimizing the risk created by a weapon concealed on his person.

 Neither are we persuaded that the frisk of Pease can be justified as a search incident to arrest. A search incident to a lawful arrest may not serve as part of the arrest's justification. *Sibron v. State of New York* (1968), 392 U.S. 40, 67, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917. Pease's arrest for possession of a controlled substance occurred *after* the frisk; clearly then, it cannot function as authority for the search.

 Arguably, a search may be contemporaneous with an arrest for a traffic violation and survive scrutiny under fourth

amendment standards.[4] Here, however, Officer Whitlow did not institute an arrest; he issued a citation. Officer Whitlow's actions are consistent with the legislative scheme established for determining when a citation as opposed to a full custodial arrest should be utilized as the means for invoking the criminal process.

Indiana law permits a law enforcement officer to arrest without a warrant when he has probable cause to believe the person is committing a *misdemeanor* in the officer's presence; it does not permit a warrantless "arrest," defined as "the taking of a person into custody, that he may be *held* to answer for a crime," for an infraction. *See,* I.C. 35–33–1–1(4) (1981) and I.C. 35–33–1–5 (1983). *Cf., also,* I.C. 35–50–4–4 (1977) (imprisonment not an authorized penalty for class C infraction) and I.C. 9–4–7–4 ("information and summons" executed by police officer provides for promise to appear; failure to appear subjects offender to arrest.) Since Officer Whitlow did not subject Pease to an arrest for violation of I.C. 9–8–6–2, the search cannot be deemed lawful as a search incident to arrest. Finding no justification and no arrest, we must agree with the trial court that evidence seized from Pease's person must be excluded. *Cf., Porter v. State* (1987), Ind.App., 512 N.E.2d 454, *trans. denied,* (defendant concedes pat-down reasonable.)

JUDGMENT AFFIRMED.

CONOVER, P.J., and NEAL, J., concur.

---

**4.** The U.S. Supreme Court held in *U.S. v. Robinson* (1973), 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 and *Gustafson v. Florida* (1973), 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 that where a full *custodial* arrest was lawful, a search incident to that arrest required no additional justification. It reserved the question of whether a similar search occurring incident to a traffic stop where notice of the violation is issued and the offender is allowed to proceed is reasonable. *See, Robinson,* 414 U.S. *id.* at 237, n. 6, 94 S.Ct. at 477 n. 6. No Indiana case addresses this question either, though Indiana law is consistent with the principles adopted in *Robinson* and

*Gustafson. See, e.g., Frasier v. State* (1974), 262 Ind. 59, 312 N.E.2d 77, *cert. denied* 419 U.S. 1092, 95 S.Ct. 686, 42 L.Ed.2d 686; *Sizemore v. State* (1974), 159 Ind.App. 549, 308 N.E.2d 400, *trans. denied, cert. denied* 420 U.S. 909, 95 S.Ct. 827, 42 L.Ed.2d 838; *Easley v. State* (1975), 166 Ind.App. 316, 335 N.E.2d 838, *trans. denied. See also Collett v. State* (1975), 167 Ind.App. 185, 338 N.E.2d 286, 289. The State does not argue that the search of Pease's person is reasonable as a search incident to a traffic stop resulting in a citation. Accordingly, we have no cause to consider the reserved constitutional issue here.