**Leonard BERRY, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 82A01–9012–CR–480.**

Court of Appeals of Indiana,
First District.

July 18, 1991.

Rehearing Denied Sept. 4, 1991.

R. Mark Inman, Indianapolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Wendy Stone Messer, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Leonard Berry (Berry) appeals from a conviction of four counts: Dealing in a Schedule II Narcotic Substance,[1] a Class A felony, Possession of Cocaine,[2] a Class D felony, Operating a Motor Vehicle While Intoxicated,[3] a Class A misdemeanor, and Driving While License Suspended,[4] a Class A misdemeanor. We affirm.

## ISSUES

We restate the issues on appeal as:

1. Was the trial court correct in not questioning the jurors regarding the reason they desired to hear a replay of a witness' testimony during their deliberations?

2. Was the evidence on the intent to deliver sufficient to sustain a conviction?

3. Was the stop and ensuing search of Berry lawful, thus making any evidence thereby obtained admissible and justifying the trial court's denial of Berry's motion to suppress physical evidence?

## FACTS

On July 20, 1989, at approximately 11:45 p.m., Evansville Police Officers Patrick Bradford and Andrew Woods, were on a routine patrol. As they drove along Cross Street, they observed a Nissan vehicle, which had been parked on the wrong side of the street, pull out and continue on the wrong side of the street toward their patrol car. The officers stopped and backed their car into a driveway to allow the Nissan to pass, in order to make an investigative stop to question the Nissan's driver, since he had committed a traffic violation by driving on the wrong side of the street.

The Nissan, however, pulled into the driveway beside the officers' car and to a parking area. After some maneuvering, the two cars ended up on Cross Street, with the Nissan positioned behind the police car.

The officers approached the Nissan and observed that Berry was the driver and sole occupant.

The officers asked Berry for identification, but he was unable to produce a driver's license. The officers asked Berry to exit his vehicle and accompany them back to the patrol car, so that the officers could run a check on Berry's driving status. Prior to placing Berry in the patrol car, Officer Woods conducted a pat-down search which revealed a bulge in Berry's shirt pocket. A motion to suppress evidence of the pat-down search was granted, since the trial court determined that the pat-down search was unlawful. Berry, without handcuffs, was placed in the patrol car's rear passenger-side seat.

After Berry was placed in the patrol car, he gave Officer Woods permission to search the Nissan for the car's registration. Meanwhile, Berry told Officer Bradford that his driver's license was suspended, and Officer Bradford confirmed this through a check on Berry's driving status. Berry appeared intoxicated but refused a blood or breathalyzer test offered by Officer Woods.

During his search of Berry's car, Officer Woods found what he believed to be a smoked marijuana cigarette in the car's ashtray. As Officer Woods returned to the patrol car, he saw Berry stick his hand out of the patrol car's rear window, and drop something on the ground.

As he returned to the patrol car, Officer Woods saw a bag of white powder by the car, underneath the rear passenger door. A few inches under the patrol car, he discovered another bag of white powder, and a clear plastic bag containing two separate bags filled with orange pills.

Officer Woods retrieved the bags and gave them to Officer Bradford. The bulge earlier observed in Berry's pocket was no longer evident. Officer Bradford identified the pills as dilaudid, and the white powder as cocaine. The officers arrested Berry

1. IND.CODE § 35–48–4–1.

2. IND.CODE § 35–48–4–6.

3. IND.CODE § 9–11–2–2.

4. IND.CODE § 9–1–4–52.

and inventoried the car. They found two bags full of smaller plastic bags, a large quantity of twist ties, and additional plastic bags stuffed with smaller bags.

Other relevant facts will be stated in our discussion of the issues.

## DISCUSSION AND DECISION

### ISSUE ONE

Berry first asserts that the trial court erred in not asking the jurors why they wanted to hear a tape of Officer Woods' testimony during their deliberations, and states that such error warrants reversal of Berry's conviction on all counts. This claim must fail because the jury never heard the disputed evidence, and because Berry's claim falls within the doctrine of invited error.

■ Initially, we note that the denial of the jury's request to hear a replay of Officer Woods' testimony is harmless error because the jurors never heard the testimony replayed. Thus, Berry may not complain that the jurors ·were unfairly influenced. *See Underwood v. State* (1989), Ind., 535 N.E.2d 118, 122.

■ Defendants cannot complain of errors that they induced the trial court to make; a party may not invite error and then rely on such error as a reason for reversal, because error invited by the complaining party is not reversible error. *Amburn v. State* (1990), Ind.App., 550 N.E.2d 762, 764, *Stolberg v. Stolberg* (1989), Ind. App., 538 N.E.2d 1, 5. Such invited errors are not subject to review by this court. *Id.*

■ As in *Stolberg*, Berry objected to the admission of evidence and now asserts the trial court's failure to admit the evidence as error. Specifically, he objected to the tape of Officer Woods' testimony being replayed for the jury, the judge sustained the objection and refused the jury's request. Now, he claims that the court erred by failing to interrogate the jury regarding why they wanted to hear the tape. Under the doctrine of invited error, he is therefore estopped to argue error based on the trial court's denial of the jury's request to which he objected.

### ISSUE TWO

Berry next claims that the evidence on intent to deliver was insufficient to sustain his conviction of dealing in a Schedule II narcotic substance. He asserts that the evidence presented against him fails to meet the sufficiency test. We disagree.

We will neither reweigh the evidence nor judge the witnesses' credibility. *Peate v. State* (1990), Ind., 554 N.E.2d 825, 827. We consider only the evidence that is most favorable to the verdict, together with all reasonable inferences drawn therefrom, and will sustain a conviction if a reasonable trier of fact could conclude that the defendant is guilty beyond a reasonable doubt. *Id.*

■ Circumstantial evidence showing possession with intent to deliver may support a conviction. *Adamov v. State* (1989), Ind., 536 N.E.2d 281, 283. Possessing a large amount of a narcotic substance is circumstantial evidence of intent to deliver. *Id.* The more narcotics a person possesses, the stronger the inference that he intended to deliver it and not consume it personally. *Id.*

■ On arrest, Berry possessed a large quantity of dilaudid tablets, much more than a typical user would possess on any given day. Also, the police recovered many small plastic bags and twist ties, and yet there was no paraphernalia found, nor were there any needle marks on Berry's body. Thus, there was ample evidence to support the inference that Berry possessed the controlled substances with intent to deliver and not for personal use, and the sufficiency test is met.

### ISSUE THREE

Finally, Berry asserts that the trial court's denial of the motion to suppress physical evidence was error, and argues that *State v. Pease* (1988), Ind.App., 531 N.E.2d 1207, mandates reversal. We disagree.

■ The Fourth Amendment's fundamental precept is that individual privacy should not be subjected to unreasonable intrusions by governmental authorities. *Roll v. State* (1985), Ind.App., 473 N.E.2d 161, 164. Every seizure of a person, whether an arrest or an investigative stop, is subject to the Fourth Amendment requirement of reasonableness. *Terry v. Ohio* (1968), 392 U.S. 1, 9, 88 S.Ct. 1868, 1873, 20 L.Ed.2d 889, 899. In determining whether a particular search was reasonable under the Fourth Amendment, the legitimate governmental interest underlying the particular intrusion must be balanced against the degree of intrusion on individual privacy. *Id.*

■ Initially, we note that a trial court's decision to deny a motion to suppress is reviewed as a matter of sufficiency, and our inquiry focuses on whether there is sufficient evidence of probative value to support the denial; we will not reweigh the evidence or judge the credibility of witnesses. *Lepard v. State* (1989), Ind.App., 542 N.E.2d 1347, 1349. A police officer does not violate the Fourth Amendment by detaining and questioning someone who has just committed a traffic violation in the officer's presence. *Id.* Police may stop a vehicle for erratic driving alone, *Castle v. State* (1985), Ind.App., 476 N.E.2d 522, 524, and in evaluating the validity of an investigative stop, the totality of the circumstances must be considered. *United States v. Sokolow* (1989), 490 U.S. 1, 8, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1, 10.

■ Both parties agree that Berry committed a traffic violation in Officer Woods' and Officer Bradford's presence by driving on the wrong side of the street, and Berry was therefore rightfully detained; thus, the officers properly approached Berry's vehicle and asked to see his driver's license. *See Id.* Even in a routine stop, based on safety concerns, an officer may ask a vehicle's driver, if lawfully detained, to exit the vehicle even though the officer has no particularized reason to believe that the driver possesses a weapon, and still not offend the Fourth Amendment. *Poling v. State* (1987), Ind., 515 N.E.2d 1074, 1077,

*cert. denied*, 490 U.S. 1008, 109 S.Ct. 1646, 104 L.Ed.2d 161. This procedure is imperative to prevent injuries to the officers from passing traffic, and protect the officers from possible assault. *Pease*, 531 N.E.2d at 1211. In the case at bar, the cars were stopped in a high crime area, and many people were gathering around the vehicles. Officers Bradford and Woods were thus justified in asking Berry to accompany them back to their patrol car, especially since the patrol car was parked in front of Berry's car, contrary to normal police safety procedure.

■ Additionally, we note that Berry consented to Officer Woods' search of the Nissan, advised Officer Woods that the Nissan's registration was somewhere in the vehicle, and stated that Officer Woods could search the Nissan for the registration. Voluntary consent to search obviates the need for a valid search warrant. *Stallings v. State* (1987), Ind., 508 N.E.2d 550, 552. Thus, Officer Woods' search of the Nissan, following Berry's instructions, was lawful.

■ Berry also claims that any evidence obtained was the result of a "forced abandonment," and therefore inadmissible. This claim also fails. Berry's situation differs in several material aspects from that of the defendant in *Pease*, on which Berry relies heavily. In *Pease*, Pease was stopped for an infraction, and placed in the rear of a patrol car. Before placing Pease in the patrol car, a police officer conducted a pat-down search or "frisk" of Pease's outer clothing. After feeling a hard object in Pease's shirt pocket, the officer asked Pease what the object was. Pease reached for the pocket and fled. As he ran, Pease threw the object, which was later recovered and identified as amphetamines. Pease was charged with possession of a schedule II controlled substance. The court affirmed the trial court's granting of Pease's motion to suppress physical evidence, reasoning that Pease was improperly frisked, this frisk forced Pease to abandon the amphetamines, and therefore, any evidence obtained as a result of this frisk was inadmissible. *Id.* at 1211–1212.

■ Contrary to Berry's reading of *Pease*, we see several significant differences between *Pease* and the case at bar, making *Pease* distinguishable. Unlike the defendant in *Pease*, Berry was unable to produce a driver's license initially, and thus a further investigation into Berry's driving record was warranted. Also in contrast to the arrest in *Pease*, Berry was arrested in a known high crime area, and many people were congregating around the cars as the stop and investigation took place. When combined with the cars' positions, with Berry's car behind the patrol car, contrary to normal police safety procedure, placing Berry in the back seat of the patrol car certainly was the "least restrictive means available" for effecting the investigation. *See Florida v. Royer* (1983), 460 U.S. 491, 501, 103 S.Ct. 1319, 1326, 75 L.Ed.2d 229, 239, *Pease*, 531 N.E.2d at 1212.

■ This conclusion is supported by the Supreme Court's decision in *California v. Acevedo*, — U.S. ——, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991). The Supreme Court there expanded the police right to search containers within vehicles if they have probable cause to believe that the containers hold contraband or evidence of crime. In Berry's case, Berry himself gave Officer Woods permission to search the Nissan for the car's registration, and during that investigation, Officer Woods found the marijuana cigarette. After the lawful arrest for driving with a suspended license, the officers were justified in searching the Nissan's trunk for further evidence. *See also Spindler v. State* (1990), Ind.App., 555 N.E.2d 1319, 1322–1323.

■ Finally, the facts in *Pease* that warranted the court's finding of an illegal search when Pease dropped the amphetamines are not evident here. Berry was improperly frisked before being placed in the patrol car, and the trial court granted Berry's motion to suppress evidence concerning the illegal frisk in a hearing prior to trial. However, at trial, Berry's counsel failed to object when the Officers testified concerning the illegal frisk. A motion to suppress does not preserve an error for appellate review; the movant must also object at trial when the evidence is offered. *Schweitzer v. State* (1989), Ind., 531 N.E.2d 1386, 1388. Evidence regarding the illegal frisk and the bulge noted during this search was allowed into evidence without objection several times during the trial. Berry may not rest on his motion to suppress, but was required to renew his objection at trial. His failure to do so waives any error concerning admission of testimony regarding the illegal frisk. As the State correctly asserts, the improper frisk of Berry did not force him to abandon the evidence found on the ground by the patrol car's rear window. In sum, the claimed nexus between the illegal frisk in *Pease* and the abandonment of the evidence, which proved dispositive in that case, is not present here.

Although Berry may have been improperly frisked, that issue was not preserved. Furthermore, when he was placed in the patrol car, he gave permission to search the Nissan for registration papers, and told Officer Bradford that his license was suspended. Only after these events did Berry dispose of the evidence out of the open patrol car window. *Acevedo* serves to strengthen the State's assertion that the evidence was properly recovered, since in *Acevedo*, the Court sanctioned searches that extend beyond the parameters of the case at bar.

Finally, we note that Berry's objections at trial to the introduction of the physical evidence in question were inadequate. However, even if we recognized the adequacy of the objections, the foregoing analysis disposes of the merit of such objections. While the pat-down frisk of Berry was illegal, the stop, vehicle search, and recovery of physical evidence from the Nissan and from the ground near the patrol car were proper. We affirm.

Affirmed.

ROBERTSON and GARRARD, JJ., concur.