## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Susan E. Schultz
Corydon, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Matt D. Neace,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

February 5, 2016

Court of Appeals Case No.
31A01-1502-CR-84

Appeal from the Harrison Superior Court

The Honorable Curtis B. Eskew, Special Judge

Trial Court Cause No.
31D01-1304-FB-292

**Robb, Judge.**

# Case Summary and Issue

[1] Following a jury trial, Matt Neace was convicted of possession of methamphetamine as a Class D felony and possession of paraphernalia as a Class A misdemeanor. Neace now appeals, raising two restated issues: (1) whether the trial court committed fundamental error in admitting evidence in violation of Indiana Evidence Rule 404(b), and (2) whether the State presented sufficient evidence to support his conviction for possession of methamphetamine. Concluding the trial court did not commit fundamental error and the evidence is sufficient, we affirm.

# Facts and Procedural History

[2] In early April 2013, Indiana State Police Sergeant Paul Andry was conducting an investigation involving Neace. During the investigation, Sergeant Andry contacted Leah Ewen, who Sergeant Andry suspected had recently been in contact with Neace. On April 17, Sergeant Andry and Ewen met at Ewen's place of employment. At the meeting, Ewen admitted to using methamphetamine, providing prescription pills to Neace in exchange for methamphetamine, purchasing pseudoephedrine and other supplies to assist Neace in the manufacturing of methamphetamine, and witnessing Neace manufacture methamphetamine. Ewen agreed to assist Sergeant Andry in locating Neace.

[3]     The next day, Ewen—at Sergeant Andry's direction—began communicating with Neace via text messaging. Ewen and Neace agreed Neace would provide a "g" of what both Ewen and Sergeant Andry assumed would be methamphetamine in exchange for Ewen providing prescription pills and a box of pseudoephedrine. State's Exhibit B-14. Ewen and Neace further agreed to meet at a Family Dollar in New Salisbury, Indiana.

[4]     Prior to the exchange, Sergeant Andry searched Ewen's vehicle and Indiana State Police Trooper Katrina Smith searched Ewen's person. No cash or methamphetamine was discovered in Ewen's vehicle or on Ewen's person. Sergeant Andry explained the plan: "The plan was for [Ewen] to, whenever Matt got in the car with her, was for her to tell him that the pills and the box of pseudoephedrine was [sic] in the trunk." Transcript at 187. Once the pair exited the vehicle, the police would surround the vehicle and arrest Neace.

[5]     After the search, Ewen followed Sergeant Andry to the Family Dollar. The trip to the Family Dollar took two minutes and Sergeant Andry never lost sight of Ewen or her vehicle. Upon arrival, Ewen backed the car into a parking spot on the side of the store as instructed by Sergeant Andry. As they waited, Ewen recognized Neace drive past the Family Dollar in a green vehicle. Ewen notified Sergeant Andry, and Sergeant Andry then witnessed the green vehicle "park next to a silver Escalade that was parked at the Dairy Dip[,]" which was an ice cream shop near the Family Dollar. A male exited the green vehicle and entered the Escalade. The Escalade then drove to the Family Dollar and parked next to Ewen. The police observed Neace exit the Escalade and sit in

the front passenger seat of Ewen's vehicle. Thereafter, both Neace and Ewen exited the vehicle and approached the vehicle's trunk. At that point, the police moved in and arrested Neace. The police discovered a bag of methamphetamine and thirty dollars in cash in the vehicle's cup holder, and in Neace's pocket, a spoon with residue. Police concluded the spoon was "consistent with drug paraphernalia used to heat up a drug then use it with a hypodermic needle." *Id.* at 121. Afterwards, Sergeant Andry spoke to the occupants in the green vehicle, who were identified as Amber Collier and Sarah Bright. They stated they had seen Neace in possession of methamphetamine much earlier in the day, but they did not know whether he possessed methamphetamine when he met with Ewen.

[6] The State charged Neace with Count I dealing in methamphetamine, a Class B felony; Count II possession of methamphetamine, a Class D felony; Count III possession of paraphernalia, a Class A misdemeanor; and Count IV visiting a common nuisance, a Class B misdemeanor.[1] The State also charged Neace with being an habitual offender. The State subsequently filed a "Notice to Introduce 404(b) Evidence," stating it believed Ewen would testify Neace sold methamphetamine by way of exchanging methamphetamine for pseudoephedrine. In addition, the State believed Sergeant Andry would testify he sought Neace's whereabouts because Neace had a warrant out for his arrest

---

[1] The State dismissed Count IV before trial. In addition, the State later dismissed the habitual offender enhancement.

and because Sergeant Andry received information that Neace was manufacturing and/or selling methamphetamine. Neace filed a motion in limine to exclude evidence of Neace's prior alleged misconduct, including his criminal history, prior arrests, and warrants issued under other cause numbers. At the hearing on Neace's motion, the State explained it did not intend to introduce evidence of Neace's criminal history, prior arrests, and warrants issued under other cause numbers unless necessary for rebuttal purposes. The trial court granted Neace's motion in that regard.

[7] At trial, the State called several witnesses, including Sergeant Andry and Ewen. At the conclusion of evidence, the jury found Neace not guilty of dealing in methamphetamine, but guilty of possession of methamphetamine and possession of paraphernalia. This appeal ensued.

# Discussion and Decision

## I. Admission of Evidence

### A. Standard of Review

[8] A trial court has broad discretion in ruling on the admissibility of evidence, and on appeal, we will only disturb the ruling if it appears the trial court abused its discretion. *Ealy v. State*, 685 N.E.2d 1047, 1049-50 (Ind. 1997). "To preserve an issue regarding the admission of evidence for appeal, the complaining party must have made a contemporaneous objection to the introduction of the evidence at trial." *Oldham v. State*, 779 N.E.2d 1162, 1170 (Ind. Ct. App. 2002),

*trans. denied*. Here, Neace concedes he did not preserve the alleged error for review because he failed to object to the evidence at the time it was offered.

[9]     In such circumstances, however, a reviewing court may disregard the defendant's waiver and reverse the defendant's conviction if he has demonstrated the existence of fundamental error. *Purifoy v. State*, 821 N.E.2d 409, 412 (Ind. Ct. App. 2005), *trans. denied*. "The 'fundamental error' rule is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Id.* In other words, the fundamental error rule requires a defendant "show greater prejudice than ordinary reversible error because no objection has been made." *Id.*

## B. Challenged Testimony

[10]  Neace argues the trial court committed fundamental error in allowing the State to elicit testimony from Ewen and Sergeant Andry in violation of Indiana Evidence Rule 404(b). "Evidence Rule 404(b) specifically bars the admission of evidence of other crimes, wrongs, or bad acts allegedly committed by the defendant to prove the defendant's character, and forbids the use of this kind of evidence to show that the defendant acted in a manner consistent with that character." *Wilhelmus v. State*, 824 N.E.2d 405, 414 (Ind. Ct. App. 2005). At trial, the State called Ewen as its first witness. Ewen testified on direct examination she was originally interviewed by Sergeant Andry on April 17 as to her alleged "crimes surrounding methamphetamine[.]" Tr. at 29. The State

did not elicit testimony pertaining to Neace's alleged prior misconduct. In fact, it seems the State specifically stopped Ewen from giving testimony that would likely violate Rule 404(b):

> [State:] And when [Sergeant Andry] questioned you, what did you do?
> [Ewen:] I told him the truth
> [State:] And what was the truth?
> [Ewen:] That I had pur --
> [State:] Actually, I move to strike that question, Judge.

*Id.* at 30.

[11]  On cross-examination, defense counsel also questioned Ewen about her conversation with Sergeant Andry, but specifically asked Ewen what crimes she confessed to Sergeant Andry. Ewen testified she told Sergeant Andry that she previously assisted Neace in the manufacturing of methamphetamine, sold Neace prescription pills, sold methamphetamine, and used methamphetamine. Moreover, defense counsel asked Ewen if Neace was the only individual she assisted in the manufacturing of methamphetamine, and Ewen stated, "Like in this situation or at the time period, yes, he was the only one." *Id.* at 59. Finally, defense counsel asked if Ewen used methamphetamine daily, and if so, who she was receiving the methamphetamine from, to which Ewen responded, "I was getting it from Matt only around that time." *Id.* at 61. On re-direct, Ewen testified she used methamphetamine with Neace "all the time" and the pair got their methamphetamine because Neace "cooked it." *Id.* at 70. In addition, Ewen stated she would assist Neace in the manufacturing of

methamphetamine by purchasing the necessary supplies, and Neace cooked methamphetamine "a couple of days before [he] got arrested." *Id.* at 72.

[12] The State also called Sergeant Andry. On direct, Sergeant Andry testified, "So when I interviewed [Ewen] she indicated to me that she had provided pseudoephedrine to Matt Neace to cook meth with. And that she had been present and had actually purchased other precursors and had been present with him when me [sic] manufactured." *Id.* at 202. On cross-examination, defense counsel asked Sergeant Andry why the police did not set up any video or audio surveillance to record the controlled buy. Sergeant Andry stated he did not believe video or audio surveillance was necessary because Sergeant Andry knew he was going to arrest Neace as soon as he saw him. We note this testimony alludes to some prior alleged misconduct. In addition, the following exchange occurred:

> [Defense:] And what crime did she confess to you again?
> [Sergeant Andry:] She confessed to helping buy precursors, to helping Matt manufacture meth, . . . to purchasing Sudafed and some other chemicals for them to manufacture. All that was done in about a 2-month period right there.
> [Defense:] Did she admit to selling illegal pain pills?
> [Sergeant Andry:] Oh, yes. She did. She admitted to me --
> One of the first things she was [sic] that Matt likes prescription pills and he will meet me because I'll trade him prescription pills for meth. And so that was basically the whole premiss [sic] behind the meeting.
> [Defense:] Did you talk to anybody in the (inaudible) that Matt Neace had been in when he – before he got into Leah's vehicle?
> [Sergeant Andry:] Yes, I did.
> [Defense:] Who did you speak with?

[Sergeant Andry:] I spoke with Amber Cole Collier and Sarah Bright, who were in the green Cadillac that we secured at the Dairy Dip across the road.

[Defense:] Did either Sarah or Amber say they saw Matt Neace in possession of methamphetamine on April 18, 2013?

[Sergeant Andry:] That's a no. I'm thinking.

[Defense:] That's okay.

[Sergeant Andry:] Actually, yes, but it was not in the afternoon. It would have been probably 1:00 or 2:00 o'clock that morning. That's the . . . problem with the question.

*Id.* at 222-24.

[13] On appeal, Neace contends Ewen's and Sergeant Andry's testimony was improper under Rule 404(b) because the testimony created "a substantial risk that the jury would convict [Neace] solely on an inference of bad character and that he had a tendency to commit crimes." Appellant's Brief at 9. Specifically, Neace argues the State elicited testimony from Ewen indicating Neace manufactured methamphetamine, used methamphetamine daily, and cooked methamphetamine a few days before being arrested; and, in addition, the State elicited testimony from Sergeant Andry indicating he intended to arrest Neace as soon as he could locate him, Ewen assisted Neace in manufacturing methamphetamine, and Neace possessed methamphetamine just prior to the controlled buy. The State argues Neace is precluded from relief because Neace invited any error in the admission of the evidence in his own cross-examination of the witnesses, and even if Neace did not invite error, the error was not fundamental. We agree with the State.

[14] It is well-settled that a defendant may "open the door" to the admission of evidence otherwise inadmissible under the rules of evidence. *See Jackson v. State*, 728 N.E.2d 147, 152 (Ind. 2000). Grounded in estoppel, the doctrine of invited error provides "a party may not take advantage of an error that she commits, invites, or which is the natural consequence of her own neglect or misconduct." *Wright v. State*, 828 N.E.2d 904, 907 (Ind. 2005). In other words, "[d]efendants cannot complain of errors that they induced the trial court to make; a party may not invite error and then rely on such error as a reason for reversal, because error invited by the complaining party is not reversible error." *Berry v. State*, 574 N.E.2d 960, 963 (Ind. Ct. App. 1991), *trans. denied*.

[15] Here, although the State did elicit the testimony of which Neace complains, it was on re-direct. Neace's own attorney first elicited the vast majority of the challenged testimony. For example, Ewen testified on cross-examination she assisted Neace in the manufacturing of methamphetamine, sold Neace prescription pills, and received methamphetamine from only Neace at the time of the controlled buy. In addition, Sergeant Andry subsequently testified on cross-examination he planned on arresting Neace as soon as he could locate him, Ewen confessed to assisting Neace in the manufacturing of methamphetamine, and Neace possessed methamphetamine earlier that day. By eliciting such testimony, defense counsel opened the door for the State to elicit testimony relevant to the same, including how often Ewen used methamphetamine with Neace, how Ewen assisted Neace in the manufacturing of methamphetamine, and how Ewen received the methamphetamine. At no

point did defense counsel object to, or move to strike, the testimony given by Ewen or Sergeant Andry on the basis the testimony violated Rule 404(b).

We note the record indicates Neace's attorney attempted to take advantage of testimony regarding Ewen's methamphetamine use, while hoping to keep testimony regarding Neace's involvement in Ewen's methamphetamine use from the jury. *See* Appellant's Br. at 12 ("Ewen's credibility was at issue. Ewen further admitted she had been a daily drug user . . . . She admitted to Sgt. Andry that she committed numerous crimes . . . ."). Such a strategy invited error and we will not allow Neace to now argue the error supports reversal. *See Kingery v. State*, 659 N.E.2d 490, 494 (Ind. 1995).

# II. Sufficiency of Evidence

## A. Standard of Review

When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. *Smart v. State*, 40 N.E.3d 963, 966 (Ind. Ct. App. 2015). Rather, we consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence. *Id.* We will affirm a conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (citation omitted).

# B. Possession of Methamphetamine

[18] Neace contends the evidence is insufficient to support his conviction for possession of methamphetamine. To prove Neace committed Class D felony possession of methamphetamine, the State was required to prove Neace knowingly or intentionally possessed methamphetamine without a prescription. Ind. Code § 35-48-4-6.1(a) (2006). Although Neace argues the State charged him with only *actual* possession and it failed to meet its burden, the State may prove the defendant either actually or constructively possessed methamphetamine. *See, e.g.*, *Washington v. State*, 902 N.E.2d 280, 288 (Ind. Ct. App. 2009), *trans. denied.* Constructive possession occurs when somebody has the intent and capability to maintain dominion and control over the item. *Id.* Neace argues the evidence is insufficient because the only evidence showing Neace possessed methamphetamine came from Ewen's testimony, which Neace claims was incredibly dubious. We disagree.

[19] First, Neace had the capability to maintain dominion and control over the methamphetamine. "To prove capability, the State must show that the defendant is able to reduce the contraband to her personal possession." *K.F. v State*, 961 N.E.2d 501, 510 (Ind. Ct. App. 2012), *trans.* denied. Here, Neace sat in the front passenger seat, and the methamphetamine was discovered in the vehicle's central cup holder, within Neace's reach. *See Lampkins v. State*, 682 N.E.2d 1268, 1275 (Ind. 1997) (holding a defendant had the capability to maintain dominion and control over cocaine discovered in another person's vehicle, where the cocaine was found underneath the seat in which defendant

had been sitting and easily within the defendant's reach), *modified on reh'g on other grounds*, 685 N.E.2d 698 (Ind. 1997). Therefore, the evidence was sufficient from which the jury could infer Neace had the capability to maintain dominion and control over the methamphetamine.

[20] Second, Neace had the intent to maintain dominion and control over the methamphetamine.

> To prove the intent element, the State must demonstrate the defendant's knowledge of the presence of the contraband. This knowledge may be inferred from either the exclusive dominion and control over the premises containing the contraband or, if the control is non-exclusive, evidence of additional circumstances that point to the defendant's knowledge of the presence of the contraband. These additional circumstances may include incriminating statements by the defendant; flight or furtive gestures; defendant's proximity to the contraband; the contraband being in plain view; or the location of the contraband in close proximity to items owned by the defendant.

*K.F.*, 961 N.E.2d at 510 (citations omitted). Because Neace did not have exclusive dominion and control over Ewen's vehicle, we examine whether additional circumstances point to Neace's knowledge of the presence of methamphetamine.

[21] After being contacted by Ewen, Neace texted Ewen stating he had "sum good" and could give Ewen a "g" of what both Ewen and Sergeant Andry believed would be methamphetamine. State's Exhibits B-8, B-14. Prior to the exchange, officers searched Ewen's person and vehicle; no methamphetamine was

discovered. When Neace arrived at the Family Dollar, Officers witnessed Neace sit in the front passenger seat of Ewen's vehicle, which was in close proximity to where the methamphetamine was discovered in plain view. Sergeant Andry testified when Neace was arrested, Neace made incriminating statements:

> [State:] Did he say anything to you . . . .
> [Sergeant Andry:] Mr. Neace said to me, "I gave you a pretty good run." And I said, --
> [State:] Did he say anything about Leah to you?
> [Sergeant Andry:] Yes.
> [State:] And what did he say about Leah to you?
> [Sergeant Andry:] He said, "You wouldn't have caught me without her."

Tr. at 204. Although not an additional circumstance stated above, we note when the police arrested Neace, Neace was in possession of drug paraphernalia. The evidence is sufficient to show Neace had the intent to maintain dominion and control over the methamphetamine.

[22] Finally, we note Ewen's testimony that Neace placed the methamphetamine in the vehicle's cup holder was not incredibly dubious. The incredible dubiosity rule allows a reviewing court to "impinge on the jury's responsibility to judge the credibility of the witnesses only when it has confronted inherently improbable testimony . . . ." *Moore v. State*, 27 N.E.3d 749, 755 (Ind. 2015) (citations and internal quotation marks omitted). In other words, "[a]pplication of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could

believe it." *Love v. State*, 761 N.E.2d 806, 810 (Ind. 2002). In *Moore*, our supreme court described the appropriate scope of the rule, which requires: "1) a sole testifying witness; 2) testimony that is inherently contradictory, equivocal, or the result of coercion; and 3) a complete absence of circumstantial evidence." 27 N.E.3d at 756. If all three factors are not present, application of the incredible dubiosity rule is precluded. *Id.* at 758. As detailed in the paragraph above, there is not a complete absence of circumstantial evidence in the present case. Therefore, we conclude Ewen's testimony is not so "inherently improbable that no reasonable person could believe it." *Love*, 761 N.E.2d at 810.

[23] Taking into account Ewen's testimony, Neace's proximity to methamphetamine discovered in plain view, Neace's possession of drug paraphernalia, and Neace's incriminating statements, we conclude the evidence was sufficient to prove beyond a reasonable doubt Neace constructively possessed methamphetamine.

# Conclusion

[24] We conclude the trial court did not commit fundamental error in admitting Ewen's and Sergeant Andry's testimony mentioning Neace's prior misconduct, and the evidence was sufficient to support Neace's conviction for possession of methamphetamine. Accordingly, we affirm Neace's convictions.

[25] Affirmed.

Barnes, J., and Altice, J., concur.