Don ELLIOTT, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–9612–CR–789.

Court of Appeals of Indiana.

Jan. 30, 1998.

---

James H. Voyles, Symmes Voyles Zahn Paul & Hogan, Indianapolis, Robert R. Thomas, Hocker Thomas & Hocker, Indianapolis, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Rachel Zaffrann, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

KIRSCH, Judge.

Following a bench trial, Don Elliott was convicted on seven counts of violating Indiana's Environmental Management Act,[1] all Class D felonies. The trial court found that Elliott, who owns and manages a used car business, illegally offered to sell seven vehicles with damaged or missing emission control devices. The court sentenced Elliott to seven concurrent terms of 545 days, then suspended the sentences, placed Elliott on probation, and imposed a $12,500 fine.

We affirm.

## ISSUE

Elliott presents two issues for our review which we consolidate and restate as: whether the evidence was sufficient to prove that (1) Elliott had offered the vehicles for sale, and (2) Elliott possessed the required culpability.

## FACTS

Elliott owns and operates Elliott's Auto Sales, a retail used car business located on Pendleton Pike in Indianapolis. On November 4, 1993, George L. Miller, inspector for the City of Indianapolis Environmental Resources Management Division, visited Elliott's Auto Sales to verify that the vehicles displayed for sale complied with air pollution control standards. Typically, the inspection process involves informing the owner or manager of the inspector's purpose and requesting admittance to the lot. With permission, the inspector then examines all vehicles held for retail sale.

At the time of the November inspection, Elliott's Auto Sales had approximately fifty-two motor vehicles arranged in a "U" shape on its lot. Having been given permission to enter the premises, Mr. Miller examined all fifty-two cars and trucks. He found seven vehicles with damaged or missing emission control devices in violation of air pollution control regulations. Each of them bore a sticker on the front windshield indicating its model year and an amount which was characterized at trial as the selling price. Additionally, each displayed a "Buyer's Guide" that provided potential buyers with warranty information.

Warrants were obtained to seize the illegal vehicles. On November 5, 1996, the warrants were executed, and seven vehicles with defective or missing emission control devices were impounded. Elliott was charged with one count of violating Indiana's Environmental Management Act for each of the seven vehicles. The court found him guilty of those charges, and he now appeals.

## DISCUSSION AND DECISION

In reviewing claims of insufficient evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *Haviland v. State*, 677 N.E.2d 509, 516 (Ind.1997). We consider only the evidence supporting the judgment and all the reasonable inferences drawn therefrom. *Id.* If each element of the crime is supported by substantial evidence, we will affirm. *Id.*

Indiana Code § 13–7–13–3(a), in effect during the relevant period, provided that a person who intentionally, knowingly, or recklessly violates air pollution control laws com-

---

1. Elliott was convicted of violating IC 13–7–13–3(a) (repealed, now codified at IC 13–30–6–1) and IND. ADMIN. CODE tit. 326, r. 13–2.1–3(a)(1) (1992).

mits a Class D felony.[2] Elliott was convicted of violating the following regulation promulgated by the Air Pollution Control Board:[3]

> "No person shall rent, lease, sell, *offer for sale,* or in any manner transfer ownership of a motor vehicle with knowledge that the vehicle has been subject to tampering. For the purposes of this subdivision, *knowledge of tampering shall be imputed to any person engaged in the business of repairing, servicing, selling, leasing, or trading motor vehicles* or motor vehicle engines...."

IND. ADMIN. CODE tit. 326, r. 13–2.1–3(a)(1) (1992) (emphasis added). Tampering includes acts "to remove, render inoperative, cause to be removed, or make less operative any emission control device, unless such removal or act to render inoperative or less operative is for the purpose of motor vehicle disposal or salvage operations." IND. ADMIN. CODE tit. 326, r. 13–2.1–2(10) (1992).

Elliott does not challenge the inspector's finding that seven vehicles had been subject to tampering. Rather, he contends that the evidence does not support the conclusions that he had offered the motor vehicles for sale and that he possessed the required culpability.

### 1. "Offer for Sale"

Elliott first asserts that there is insufficient evidence to prove an "offer for sale" under 326 IAC 13–2.1–3(a)(1). Elliott posits that the phrase "offer for sale" requires a legal offer that would bind Elliott to a contract under general contract principles. In essence, Elliott insists that his "advertising" did not ripen into such an offer.

The rules applicable to construction of a statute apply also to construction of an administrative regulation. *Indiana Dep't of Natural Resources v. Peabody Coal Co.,* 654 N.E.2d 289, 292 (Ind.Ct.App.1995). Thus, we determine the meaning of "offer for sale" by looking at the regulation's plain language. *See Clifft v. Indiana Dep't of State Revenue,* 660 N.E.2d 310, 316 (Ind.1995). The regula-

tion is examined and interpreted as a whole, and the language itself is scrutinized including the grammatical structure of the clause. *See id.* In our analysis we give words their common and ordinary meaning without unduly emphasizing a strict literal or selective reading of individual words. *Id.* By reading the plain language of the regulation we carry out our primary duty of giving effect to the intention of the administrative body that promulgated the rule. *See Brook v. State,* 448 N.E.2d 1249, 1251 (Ind.Ct.App.1983). Indispensable to determining intent is a consideration of the reasons and policy which underlie the regulation and the goals sought to be attained. *See id.*

Here, the relevant language states that "No person shall ... offer for sale ... a motor vehicle with knowledge that the vehicle has been subject to tampering." 326 IAC 13–2.1–3(a)(1). The word "offer" is used as a verb in the sentence and, as such, is defined as "[t]o bring to or before; to present for acceptance or rejection; to hold out or proffer." BLACK'S LAW DICTIONARY 1081 (6th ed.1990). The plain language of the regulation illustrates that it applies to all motor vehicles presented for sale to potential purchasers in the normal course of the retailer's business. *See, e.g., Autoworld Specialty Cars, Inc. v. United States,* 815 F.2d 385 (6th Cir.1987) (imported automobile may not be sold or offered for sale unless it complies with safety and air pollution standards; five vehicles seized from showroom of dealership for noncompliance).

We find support for this interpretation in the policy underlying the air pollution control laws, the stated purpose of which is "to maintain the purity of [Indiana's] air resource," which includes safeguarding the air "through the prevention, abatement, and control of air pollution by all practical and economically feasible methods." IC 13–1–1–1 (repealed, now codified at IC 13–17–1–1). Consumers rely upon a dealer to sell vehicles which comply with air pollution control laws. By applying the law to all vehicles presented for

---

**2.** IC 13–7–13–3(a) (repealed) is now codified at IC 13–30–6–1.

**3.** IC 13–1–1–6 (repealed, now codified at IC 13–17–5–1) gave the Air Pollution Control Board of the State of Indiana the authority to adopt rules for the control of emissions from vehicles.

sale, non-conforming vehicles are prevented from reaching unsophisticated consumers. This, in turn, prevents a source of air pollution, "one of the most notorious types of public nuisance in modern experience." *Washington v. General Motors Corp.*, 406 U.S. 109, 114, 92 S.Ct. 1396, 1398, 31 L.Ed.2d 727, 731 (1972).

■ Here, Elliott, a retailer of used motor vehicles, arranged the seven cars and trucks along with approximately forty-five other vehicles on his used car lot in a "U" shape, optimizing public viewing of the vehicles from Pendleton Pike. The front windshield of each of the seven vehicles bore a sticker describing the model year and price. Although Elliott argues that the evidence does not demonstrate that he was bound by the listed price, the inferences from the evidence support a conclusion that he offered the vehicles at the prices designated, subject to negotiation which often accompanies vehicle purchases.

In addition, a Buyer's Guide, providing warranty information to potential purchasers, was prominently displayed on each vehicle. No more is needed to constitute "offer for sale" under 326 IAC 13–2.1–3(a)(1). The presentation of vehicles, along with the specific information pertinent to a sale of each, supports the conclusion that Elliott offered seven vehicles for sale in contravention of the regulation.

### 2. Culpability

Indiana Code § 13–7–13–3(a) directed that a person may not "intentionally, knowingly, or recklessly" violate air pollution control laws. Pursuant to 326 IAC 13–2.1–3(a)(1), knowledge of tampering is imputed to a person such as Elliott who is engaged in the business of selling motor vehicles. Elliott contends that, without imputing knowledge of tampering to him, the court could not have found the required culpability. He further contends that imputation of knowledge violates his constitutional right to due process of law.

■ We need not consider Elliott's due process claim. The legislature specifically defined the relevant offense as including an element of culpability. *Cf. Walker v. State,*

668 N.E.2d 243 (Ind.1996) (reviewing IC 35–48–4–1 which does not include express culpability requirement in order to elevate offense to higher class of felony). An administrative agency may adopt rules and regulations to enable it to put into effect the purposes of the law, but it may not by its rules and regulations add to or detract from the law as enacted. *Johnson County Farm Bureau Co-op. Ass'n v. Indiana Dep't of State Revenue,* 568 N.E.2d 578, 587 (Ind.Tax 1991), *aff'd,* 585 N.E.2d 1336 (Ind.1992). Accordingly, the provision of 326 IAC 13–2.1–3(a)(1) which imputes knowledge of tampering to a defendant is invalid. We hold that the culpability required to convict Elliott is found in IC 13–7–13–3: intentionally, knowingly, or recklessly.

■ Here, relying on Indiana Code § 13–7–13–3(a), the trial court specifically stated:

"The question here was one of culpability. And the charging information[ ] alleged intentionally, knowingly or recklessly....

. . . .

[I]t would have been difficult to say that he intentionally did this but under the circumstances and his sole control and operation of the business *I think his culpability was knowingly and if not that at least recklessly* and he did violate these air pollution control regulations."

*Record* at 269–71 (emphasis added). The Record establishes that the court analyzed evidence of intent independent of the administrative provision. Specifically, the trial court concluded that Elliott, at a minimum, recklessly violated the anti-tampering regulation. A person behaves recklessly if the person "engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct." IC 35–41–2–2(c).

■ Intent involves a mental state, *McClendon v. State,* 671 N.E.2d 486, 489 (Ind.Ct.App.1996), the determination of which rests with the trier of fact. *Gipperich v. State,* 658 N.E.2d 946, 950 (Ind.Ct.App. 1995), *trans. denied* (1996). In making the necessary determination, the trier of fact may resort to reasonable inferences based

upon an examination of the surrounding circumstances. *McClendon*, 671 N.E.2d at 489.

Here, George L. Miller, inspector for the City of Indianapolis Environmental Resources Management Division, testified that he had inspected Elliott's Auto Sales seven times. *Record* at 118. Elliott had received notice of a previous violation. *Record* at 209. After one inspection, an educational meeting took place that advised Elliott of the steps he needed to take to avoid violations in the future. *Record* at 208. Elliott had also been invited to attend tampering classes which make an owner or mechanic "aware of what it is we were looking for and basically how to determine [whether] a vehicle was in or out of compliance." *Record* at 209. The purpose of the educational sessions was "to avoid problems in the future." *Record* at 209–10.

In light of this evidence, Elliott cannot now claim that he was unaware of the anti-tampering laws and of his responsibility to ensure compliance with those laws. The trial court could reasonably have concluded that Elliott's offering the vehicles for sale without first ensuring that they met the standards imposed by the air pollution control laws was "in plain, conscious, and unjustifiable disregard of harm" to the environment and that this disregard involved a "substantial deviation from acceptable standards of conduct." IC § 35–41–2–2(c). Elliott's argument that there was insufficient evidence of his culpability fails. The evidence was sufficient to support his convictions for violating the Environmental Management Act.

Affirmed.

SULLIVAN and FRIEDLANDER, JJ., concur.