**Derek S. WILSON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 55A01–9908–CR–262.

Court of Appeals of Indiana.

April 28, 2000.

Rehearing Denied June 23, 2000.

776

Bryan L. Cook, Indianapolis, attorney for appellant.

Jeffrey A. Modisett, Attorney General of Indiana, James B. Martin, Deputy Attorney General, Indianapolis, attorneys for appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant Derek S. Wilson (Wilson) appeals his conviction of carrying a handgun without a license in his possession, a Class A misdemeanor. Ind.Code § 35–47–2–1.

We affirm.

### ISSUES

Wilson raises three issues for our review, which we restate as follows:

1. Whether the pat down of Wilson was lawful in order for the trial court to deny Wilson's motion to suppress the handgun discovered as a result of the pat down.

2. Whether the State laid the proper foundation to show that the arresting officer had the requisite authority as an Indiana State Trooper in order to stop Wilson and conduct a pat down search of his person.

3. Whether the State presented sufficient evidence to convict Wilson of carrying a handgun without a license in his possession.

### FACTS AND PROCEDURAL HISTORY

At approximately 1:30 a.m., on January 17, 1999, Indiana State Trooper Patrick Etter (Etter) noticed a speeding vehicle. Etter pursued the vehicle until the vehicle finally stopped behind a gas station in a deserted area. Etter approached the vehicle and asked Wilson for identification. At this point, Etter noticed that Wilson's eyes were red and glassy, and he smelled strongly of alcohol. There were also several alcoholic beverage containers in the vehicle. Etter then asked Wilson to step out of his vehicle and come to his police car to determine if Wilson showed signs of intoxication. However, before Wilson exited his vehicle, Etter asked him if he had any weapons in his vehicle or on his person, to which Wilson responded in the negative. Etter testified that before he places anybody in his vehicle, he pats down the individual for weapons for his own safety. On the way to the police car, Etter again asked Wilson if he had any weapons on his person, to which Wilson again responded in the negative. Etter then told Wilson that he needed to pat him down for weapons, and Etter conducted the pat down search of Wilson for weapons. As a result of the pat down search, Etter discovered a handgun on Wilson's person. Wilson was arrested and charged with carrying a handgun without a license.

On April 28, 1999, Wilson filed a motion to suppress the evidence of the handgun discovered as a result of the pat down search.

On July 15, 1999, a hearing on the motion to suppress and a court trial was held. At trial, Wilson challenged the arresting officer's legal authority to conduct a traffic stop as well as the lack of justification for a pat down search of Wilson. The trial court denied Wilson's motion to suppress the handgun and found that the State had laid a proper foundation that Etter had the legal authority to stop Wilson. Wilson was found guilty of possession of a handgun without a license. Wilson now appeals.

### DISCUSSION AND DECISION

#### I. *Motion to Suppress*

Wilson first contends that the trial court erred in denying his motion to suppress the evidence of the handgun found as a result of the pat down search. Specifically, he argues that the pat down search that

resulted in the discovery of the handgun was not based upon a reasonable belief, supported by articulable facts, that he was armed and dangerous. We disagree.

The trial court has broad discretion in ruling on the admissibility of evidence. *Drake v. State*, 655 N.E.2d 574, 575 (Ind.Ct.App.1995). We will reverse a trial court's ruling on the admissibility of evidence only when it has been shown that the trial court abused its discretion. *Carter v. State*, 692 N.E.2d 464, 465 (Ind.Ct. App.1997). A trial court's decision to deny a motion to suppress is reviewed as a matter of sufficiency. *Wilson v. State*, 670 N.E.2d 27, 29 (Ind.Ct.App.1996). Thus, in reviewing a trial court's decision on a motion to suppress, we do not reweigh the evidence or judge the credibility of witnesses, but determine if there was substantial evidence of probative value to support the trial court's ruling. *Whitfield v. State*, 699 N.E.2d 666, 668 (Ind.Ct.App. 1998), *trans. denied*.

However, when evaluating determinations of reasonable suspicion, we accept the factual findings of the trial court unless they are clearly erroneous. *State v. Lamar*, 680 N.E.2d 540, 542 (Ind.Ct.App. 1997) (citing *Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996)). Findings of fact are clearly erroneous when the record lacks any facts or reasonable inferences to support them. *Id.* When determining whether the findings are clearly erroneous, we consider only the evidence most favorable to the judgment and the reasonable inferences flowing from that evidence. *Id.* We will not judge witness credibility, or reweigh the evidence. *Id.* However, the ultimate determination of reasonable suspicion or probable cause is reviewed de novo. *Id.*

In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court determined that the Fourth Amendment to the United States Constitution permits a police officer to approach a person for purposes of investigating possible criminal behavior without probable cause to make an arrest, and to execute a reasonable search of the person for weapons for the officer's own protection. *Drake*, 655 N.E.2d at 575. When conducting this search, the Court indicated that:

[T]here must be narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experiences.

*Terry*, 392 U.S. at 27, 88 S.Ct. 1868 (citations omitted).

On appeal, the State contends that the pat down search of Wilson was necessary to protect the safety of the officer. The State relies on *Burkett v. State*, 691 N.E.2d 1241 (Ind.Ct.App.1998), where this court found that a police officer's pat down search of the defendant before he placed him in the police car was lawful. In that case, the facts were as follows:

Moore [police officer] stopped Burkett [defendant] because he was driving 78 miles per hour in a 55 miles per hour zone. Moore smelled alcohol and performed some filed sobriety tests on Burkett. When Burkett failed one of the tests, Moore administered a portable breath test which showed that Burkett had a BAC of .08. Moore escorted Burkett to Moore's police car to trans-

port him to the county jail for a certified breath test. Before placing Burkett in the police car, Moore conducted a pat-down search of Burkett for officer safety.

*Id.* at 1244. We reasoned that because at that point the officer would be alone in the vehicle with the defendant as he transported him to the county jail, a reasonably prudent man in the same circumstances would be warranted to pat down the defendant for his own safety. *Id.*

On the other hand, Wilson relies on two cases decided by this court to argue that officer safety is not sufficient to justify a warrantless pat down search of a suspect.

First, Wilson contends that *L.A.F. v. State* applies to the case at hand because this court found that while an initial detention was justified, the officers lacked justification for a pat down search, even though the officers claimed that the pat down was done for officer safety. 698 N.E.2d 355 (Ind.Ct.App.1998). In that case, two police officers discovered L.A.F., a child, sleeping in the back seat of a car outside a housing complex. The officers asked L.A.F. to exit the vehicle and requested that he identify himself. One officer then conducted a pat down search and discovered a handgun in L.A.F.'s pocket. *Id.* at 355. We held that the pat down search of the child, which the police conducted during a curfew investigation, was unlawful. *Id.* at 356. We reasoned that although L.A.F.'s initial detention to check for a curfew violation may have been constitutionally appropriate, the officer failed to identify any specific and articulable facts, which justified the additional frisk that resulted in the gun being discovered. *Id.* Further, we found the fact that the officers were investigating L.A.F. and another individual for curfew violations and that L.A.F. had been sleeping in a car at the time the officers arrived to be insufficient for a reasonably prudent man to be warranted in the belief that his safety or that of others was in danger. *Id.* Thus, although the officers did testify that the pat down was conducted for "officer

safety," and they may have been aware of additional facts and circumstances that caused them to fear for their safety and believe that L.A.F. might be armed and dangerous, the State failed to present them. *Id.* We find this case to be unpersuasive because of its factual dissimilarity and because in the case at hand, the officer and the State did identify specific and articulable facts to justify Officer Etter's pat down search of Wilson.

Next, Wilson contends that *State v. Pease* also applies to the case at hand because this court held that a pat down search of an individual, stopped for a traffic violation, was impermissible, where the officer had no information that would support a particularized belief that the individual was armed and presently dangerous. 531 N.E.2d 1207 (Ind.Ct.App.1988). In that case, the police officer noticed that the defendant's windshield was cracked as he approached the vehicle. *Id.* at 1209. The officer stopped the vehicle and asked the defendant to exit the vehicle and to produce identification. *Id.* The officer escorted the defendant to his police car in order to run a driver's license check and to write a citation for the cracked windshield. *Id.* Before placing the defendant into the police car, the officer conducted a pat down search for weapons and felt a hard object in the defendant's shirt pocket. *Id.* at 1209–10. The defendant reached for the pocket, turned, and ran as he withdrew the object from his pocket and threw it. *Id.* at 1210. The officer subsequently recovered the object, later determined to be amphetamines. *Id.*

This court determined that the officer improperly frisked the defendant because the pat down search was not supported by a particularized belief that the defendant was armed and presently dangerous. *Id.* at 1211–12. We reasoned that, although the officer testified that he patted down the defendant because it was standard procedure to do so before placing any individual in his squad car, the defendant was not an individual with a known propensity for

violence or criminal activity, and he did not make any gestures indicative of an intent to assault or act as if he possessed a weapon. *Id.* at 1212. We further reasoned that the State's attempt to justify the frisk, based upon a generalized concern for the officer's safety, was not persuasive, because the officer intended to place the defendant in the back of the police car while he ran a driver's license check and issued a citation, and this course was not the least restrictive means reasonably available to effectuate the investigation. *Id.* Instead, the defendant "could have waited in his car or beside the road until the check was complete, minimizing the risk created by a weapon concealed on his person." *Id.* Because the officer was not instituting an arrest, and was instead issuing a citation, there was no reasonable need to place the defendant inside the police car, therefore, the risk of a weapon concealed on the defendant was unnecessarily created, and there was no need to pat him down in order to protect the officer's safety.

■ However, our review of the Record reveals that at approximately 1:30 a.m., on January 17, 1999, Officer Etter stopped Wilson because he was speeding. Etter was alone when he stopped Wilson in a deserted, wooded area behind a closed gas station. There were no streetlights, no passing vehicles, and no evidence of any people in the area. Etter approached the vehicle and asked Wilson for identification. At this point, Etter noticed that Wilson's eyes were red and glassy, and he smelled strongly of alcohol. There were also several alcoholic beverage containers in the vehicle. Etter then asked Wilson to step out of his vehicle and come to his police car to determine his state of intoxication. Etter testified that he not only planned to administer a "Horizontal Gaze Test" inside his car in order to determine Wilson's intoxication, but also that he typically conducts this intoxication test inside his patrol car.

However, before Wilson exited his vehicle, Etter asked him if he had any weapons in his vehicle or on his person, to which Wilson responded in the negative. Etter testified that before he places anybody in his vehicle, he pats down the individual for weapons for his own safety. On the way to the police car, Etter again asked Wilson if he had any weapons on his person, to which Wilson again responded in the negative. Etter then told Wilson that he needed to pat him down for weapons, and Etter conducted the pat down search of Wilson for weapons. As a result of the pat down search, Etter discovered a handgun on Wilson's person. Etter further testified that at the time of the pat down search, Wilson was not arrested, but he was under investigation for operating while intoxicated. Because at this point Etter would have been alone in his vehicle with Wilson as he investigated Wilson for operating while intoxicated and determined the state of Wilson's intoxication, a reasonably prudent man in the same circumstances would be warranted to pat down Wilson for his own safety. We find the circumstances in this case to be similar to those of the *Burkett* case wherein we found that the pat down search therein was justified by the officer's reasonable concerns for his safety. *See Burkett*, at 1244. Therefore, because the officer and the State did identify specific and articulable facts to justify Officer Etter's pat down search of Wilson, and because the circumstances in this case provided justification for Etter's search of Wilson, we find that the trial court properly denied Wilson's motion to suppress the evidence of the handgun discovered as a result of the pat down search. Etter had reasonable suspicion of illegal activity to support an investigation of the circumstances, and a pat down search before placing Wilson in his car to further investigate his level of intoxication was justified to protect the officer's safety.

## II. *Requisite Authority*

■ Next, Wilson argues that the State did not prove that Etter had the

requisite training to give him legal authority to conduct a traffic stop. Specifically, Wilson contends that the State failed to lay the necessary foundation that Etter is a law enforcement officer with the legal authority to seize him.

Wilson relies on Ind.Code § 5–2–1–9 for his contention that the State failed to lay the foundation that Etter had the requisite training in order to seize Wilson because in his testimony, Etter, could not provide specific dates and records of his training. Specifically, Ind.Code § 5–2–1–9(d) states in relevant part as follows:

Except as provided in subsections (e) and (*l*), a law enforcement officer appointed to a law enforcement department or agency after June 30, 1993, may not:

(1) make an arrest;

(2) conduct a search or a seizure of a person or property; or

(3) carry a firearm;

unless the law enforcement officer successfully completes, at a board certified law enforcement academy or at the northwest Indiana law enforcement training center under section 15.2 of this chapter, the basic training requirements established by the board under this chapter.

Further, Ind.Code § 5–2–1–9(g) provides the basic training requirements in order for an officer to be authorized under Ind.Code § 5–2–1–9(d):

The board shall adopt rules under IC 4–22–2 to establish a mandatory inservice training program for police officers. After June 30, 1993, a law enforcement officer who has satisfactorily completed the basic training and has been appointed to a law enforcement department or agency on either a full-time or part-time basis is not eligible for continued employment unless the officer satisfactorily completes a minimum of sixteen (16) hours each year of inservice training in any subject area included in the law enforcement academy's basic training course or other job related subjects that are approved by the board as determined by the law enforcement department's or agency's needs.

Therefore, Wilson argues that the State failed to lay the necessary foundation that Etter completed the required sixteen hours of training in order to have the authority to seize him. We disagree.

Although Etter did not personally keep records of his training, the Indiana State Police Training Division keeps track of when training is taken, how many hours are taken, and when training needs to be retaken. Essentially, Wilson argues that Etter's inability to testify as to the specific dates and amount of training he had accumulated before stopping Wilson is determinative of the foundational requirement the State was required to meet in order to prove that Etter had the legal authority to stop Wilson. However, the issue is not whether Officer Etter personally keeps a record of his training and whether he knows the specific dates of his training, but whether he in fact had the authority as a result of his training. Etter testified that his training amounted to well over sixteen hours, and in fact was closer to one hundred (100) hours. Etter further testified that on January 17, 1999, he had successfully completed the requirements for his inservice training with the Indiana State Police. In response to the State's foundational questions, Etter stated that his 1998 annual training included: 1) annual first aid certification of 8 hours, 2) annual firearms training of 32 hours, 3) annual defensive tactics training of 32 hours, and 4) two days a month of Emergency Response Team or SWAT training. Etter also testified that certified instructors for the Indiana State Police taught his training. Therefore, we find that the record reveals that the trial court properly determined that the State sufficiently laid the requisite foundation that Etter had the legal authority to seize Wilson.

### III. *Sufficient Evidence*

■ Finally, Wilson argues that the State failed to present sufficient evidence to convict him of carrying a handgun without a license in his possession. Specifically, Wilson contends that the State failed to prove that he lacked possession of a license at the scene of the arrest. Essentially, Wilson argues that he did not have the burden of proving that he was in possession of a license for the handgun, instead, the burden was on the State to prove that he was not in possession of a license. We disagree.

■ In reviewing claims of insufficient evidence, our court neither reweighs the evidence nor judges the credibility of witnesses. *Guffey v. State,* 705 N.E.2d 205, 208 (Ind.Ct.App.1999). We consider only the evidence supporting the judgment and all the reasonable inferences drawn therefrom. *Elliott v. State,* 690 N.E.2d 774, 776 (Ind.Ct.App.1998). If each element of the crime is supported by substantial evidence, we will affirm. *Id.* "If there is substantial evidence of probative value from which a trier of fact could find guilt beyond a reasonable doubt, we will affirm the conviction." *Newman v. State,* 677 N.E.2d 590, 593 (Ind.Ct.App.1997) (citing *Gant v. State,* 668 N.E.2d 254, 255 (Ind. 1996)). We are also mindful that the trier of fact is entitled to determine which version of the incident to credit. *Barton v. State,* 490 N.E.2d 317, 318 (Ind.1986). Furthermore, the trier of fact and not this Court determines the credibility of the witnesses. *Ward v. State,* 439 N.E.2d 156, 159 (Ind.1982).

■ In order to convict Wilson of carrying a handgun without a license in his possession, the State was required to prove that Wilson carried a handgun on or about his person without a license being in his possession. Ind.Code § 35–47–2–1. Ind.Code § 35–47–2–24 states that in an information or indictment brought for the enforcement of any provision of the enforcement of handguns chapter, "[t]he bur-

den of proof is on the defendant to prove that … he has a license as required under this chapter." Therefore, the statute clearly assigns the burden to the defendant to prove that he was in possession of a license.

In this case, a review of the record reveals the admission of a letter, certified with a Seal of the State of Indiana, and dated June 16, 1999, from the custodian of records concerning handgun licenses at the Indiana State Police Department. The letter states as follows:

I, Robert H. Omstead, Captain, Acting Commander of the Indiana Central Repository, do hereby certify that I am the custodian of records concerning handgun licenses and the proper official to execute this certificate.

This is to certify that the undersigned keeper of the records of the Indiana State Police Department, more specifically the section concerning handgun permits, as provided in the handgun law, IC 35–47–1–1 et. seq., has caused a diligent search of the records under his care and has found that **Derek S. Wilson**, Date of Birth **10/23/65**, does have a permit to carry a handgun license # 1046699 which was issued in the State of Indiana on **February 25, 1999** and expires on **February 25, 2003**.

A further search of the records fail [sic] to show a license being issued to Mr. Wilson prior to February 25, 1999.

(R. 96, emphasis in original).

Wilson objected to the admission of the letter, arguing that the statement regarding a further search of the records revealed that a license was never issued to Wilson prior to February 25, 1999, is a "factual finding regarding a specific complaint," (R. 92), and is hearsay. However, the trial court overruled Wilson's objection and found that Ind. Evidence Rule 803(10) governed the admissibility of the letter as a hearsay exception to prove the absence of a public record or entry. Evid.R. 803(10) states that:

To prove the absence of a record, report, statement, or data compilation in any

form, or the nonoccurrence or nonexistence of a matter of which a record, report, statement, or data compilation in any form was regularly made and preserved by a public office or agency, evidence in the form of a certification in accordance with Rule 902, or testimony, that a diligent search failed to disclose the record, report, statement, or data compilation, or entry.

Therefore, because we find that the letter from the custodian of records concerning handgun licenses was properly admitted under the Indiana Rules of Evidence, the records concerning handgun licenses are public records, and a diligent search failed to show that a handgun license was issued to Wilson prior to February 25, 1999, there was sufficient evidence to prove that Wilson did not have a license for his handgun on January 17, 1999.

### CONCLUSION

Based on the forgoing, we find that the trial court properly denied Wilson's motion to suppress the handgun discovered as a result of the pat down, the State laid a proper foundation to show that Etter had the requisite authority as an Indiana State Trooper in order to stop Wilson and conduct a pat down search of his person, and the State presented sufficient evidence to convict Wilson of carrying a handgun without a license in his possession.

Affirmed.

SHARPNACK, C.J., concurs.

KIRSCH, J., dissents with opinion.

KIRSCH, Judge, dissenting.

I respectfully dissent.

The record before us fails to disclose particular and articulated facts which justify the pat down search which produced the hand-gun. Trooper Etter testified, "Before I put anybody in my car, whether they're broke down on the side of the highway or what I pat them down for weapons for my own safety." Record, p. 66. He acknowledged that he did not have "any specific facts" that caused him to believe Wilson was armed. Record at 69. Finally, Trooper Etter testified that while he typically does the Horizontal Gaze sobriety test inside his car, it can be done outside the car as well. Record, p. 72.

Here, we have an officer's standard practice being used as the basis for the pat down search. By the officer's own admission, he did not have "any specific facts" which caused him to believe he was in danger. *Terry* and its progeny require more than standard practices. They require a particularized and articulated belief that the individual was armed and dangerous. While the placement of an individual in a police car for transport to the county jail was held to be a sufficient basis for a pat down in *Burkett v. State*, 691 N.E.2d 1241 (Ind.Ct.App.1998), the basis has been held not to obtain where there is no reasonable need to place the defendant inside the police car. *State v. Pease*, 531 N.E.2d 1207 (Ind.Ct.App.1988). Here, Trooper Etter testified that he could have done the sobriety testing outside the police car and that it was only his typical practice to do so inside the car. Thus, as in *Pease*, the risk posed by a weapon concealed on the defendant inside the police car was unnecessarily created.