Paul NANTZ, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 40A04–0006–CR–237.

Court of Appeals of Indiana.

Jan. 11, 2001.

Jason J. Pattison, Rogers & Dove, North Vernon, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Grant H. Carlton, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

RILEY, Judge

### STATEMENT OF THE CASE

Appellant–Defendant, Paul Nantz (Nantz), appeals his conviction for pointing a firearm, a Class D felony, Ind.Code § 35–47–4–3(b).

We affirm.

### ISSUES

Nantz raises four issues on appeal, which we restate as follows:

1. Whether there was sufficient evidence to sustain his conviction for Pointing A Firearm.

2. Whether the trial court properly instructed the jury on all elements of the charged crime.

3. Whether he received ineffective assistance of trial counsel.

4. Whether his sentence was manifestly unreasonable.

## FACTS AND PROCEDURAL HISTORY

In 1998, Ralph Mahoney (Mahoney) brought a bulldozer to Nantz's property located on seventy-three acres in Jennings County, Indiana. Mahoney was using the bulldozer to grade the road on Nantz's property leading to his house; however, during the process of grading the road the bulldozer broke down. Thus, Mahoney asked Nantz to allow him to keep the bulldozer in Nantz's barn until Mahoney could fix it. The bulldozer remained on Nantz's property for a year and on November 29, 1999, Mahoney and his wife, Suzanne Smith (Smith) returned to Nantz's property to retrieve the bulldozer. Also, Mahoney hired a driver, Donald Petro (Petro), to help him load the bulldozer on a trailer.

Smith drove a separate vehicle onto the property and stopped at the Nantz residence, while Mahoney and Petro proceeded to the barn to retrieve the bulldozer. It is uncontroverted that Mahoney, Smith and Petro entered Nantz's property without his permission. Smith talked with Nantz and offered to pay him for the bulldozer.[1] Mahoney then approached Nantz and Smith and offered to pay Nantz for the bulldozer. Nantz, who was intoxicated at the time, became angry and ordered Mahoney off his property. Nantz then walked in his house and returned with a pistol. Nantz walked to the barn area and held the gun to Petro's head and ordered him off the property. Meanwhile Mahoney and Smith left the property and called the police. The police later recovered a loaded nine-millimeter pistol from Nantz's vehicle.

The police arrested Nantz and subsequently charged him with pointing a firearm, a Class D felony, and battery by bodily waste, a Class D felony. A jury trial was held on February 10, 2000, and Nantz was convicted on both counts.[2] He was thereafter sentenced to three years for each count, with the sentences to be served consecutively.

This appeal followed.

## DISCUSSION AND DECISION
### I. Sufficiency of the Evidence

Nantz asserts that the State failed to present sufficient evidence in order to support his conviction of pointing a firearm. Essentially, Nantz argues that he put forth sufficient evidence in support of his defense of property defense and the State did not rebut this defense.

In reviewing claims of insufficient evidence, our court neither reweighs the evidence nor judges the credibility of witnesses. *Elliott v. State,* 690 N.E.2d 774, 776 (Ind.Ct.App.1998). We consider only the evidence supporting the judgment and all the reasonable inferences drawn therefrom. *Id.* If each element of the crime is supported by substantial evidence, we will affirm. *Id.* "If there is substantial evidence of probative value from which a trier of fact could find guilt beyond a reasonable doubt, we will affirm the conviction." *Newman v. State,* 677 N.E.2d 590, 593 (Ind.Ct.App.1997) (citing *Gant v. State,* 668 N.E.2d 254, 255 (Ind.1996)).

To convict Nantz of pointing a firearm as a Class D felony the State was required to prove that he knowingly or intentionally pointed a loaded firearm at another person. Ind.Code § 35–47–4–3. Petro testified that Nantz pointed a pistol at his head and ordered him off the prop-

---

1. Smith testified that she offered to pay Nantz for the bulldozer because Nantz claimed that Mahoney owed him money. Nantz also claimed that he and Mahoney had agreed that Nantz would keep the bulldozer for this debt. Smith and Mahoney testified that they did not owe Nantz money and only offered to pay him as a means to recover the bulldozer.

2. Nantz does not appeal his conviction of battery by bodily waste.

erty. Nantz admits that he waived a loaded firearm while ordering Petro off his property, but contends that he never intentionally pointed the firearm at Petro. It was within the jury's province to believe Petro's testimony rather than Nantz's testimony and it is not our role to reweigh this evidence. Furthermore, the testimony of the victim alone is sufficient to support a conviction. *Waldon v. State,* 684 N.E.2d 206, 207 (Ind.Ct.App.1997) *trans. denied.* Thus, the State presented sufficient evidence to establish beyond a reasonable doubt that Nantz pointed a loaded firearm at Petro.

■ Nonetheless, Nantz argues that his actions were justified because he was defending his property. Ind.Code § 35–41–3–2(c), provides the following with regard to whether a person may use force to defend his or her property:

> With respect to property other than a dwelling or curtilage, a person is justified in using reasonable force against another person if he reasonably believes that the force is necessary to immediately prevent or terminate the other person's trespass on or criminal interference with property lawfully in his possession, lawfully in possession of a member of his immediate family, or belonging to a person whose property he has authority to protect. However, a person is not justified in using deadly force unless that force is justified under subsection (a) of this section.[3]

■ Thus, Nantz argues that he used reasonable force to defend his property and therefore, his actions were justified. If self-defense is supported by the evidence, the State must disprove at least one element of the defense beyond a reasonable doubt. *Miller v. State,* 720 N.E.2d 696, 700 (Ind.1999); *see also Hanic v.*

*State,* 406 N.E.2d 335, 339 (Ind.Ct.App. 1980) (on review, self defense cases are analogous to defense of property cases). However, the State may refute a claim of self-defense by direct rebuttal or by relying on the evidence presented in its case-in-chief. *Mariscal v. State,* 687 N.E.2d 378, 381 (Ind.Ct.App.1997), *reh'g denied, trans. denied.* It is the factfinder's decision to determine whether a claim of self-defense has been disproved. *Pointer v. State,* 585 N.E.2d 33, 36 (Ind.Ct.App.1992). "A conviction in spite of a claim of self-defense will be reversed only if no reasonable person could say that the claim was negated by the prosecution beyond a reasonable doubt." *Id.*

Consequently, to establish his defense of property defense, Nantz was required to prove that he used reasonable force to prevent or terminate a trespass or to defend his property or his family's property or property he was authorized to protect. The State argues that the force used by Nantz, pointing a loaded gun at Petro, constitutes deadly force and thus, was unreasonable force under the statute. Since Nantz does not assert that he was attempting to protect himself or a third person and contends rather that he was defending his property interest in the bulldozer, he was prohibited under the statute from using deadly force. However, Nantz argues that he did not use deadly force; that instead his conduct constituted the threat of deadly force and that the threat of deadly force was reasonable force under the circumstances.

" 'Deadly force' means force that creates a substantial risk of serious bodily injury." Ind.Code § 35–41–1–7. There appears to be no case in Indiana addressing whether the conduct at issue here, pointing a load-

---

**3.** Ind.Code § 35–41–3–2(a) provides as follows: "A person is justified in using reasonable force against another person to protect himself or a third person from what he reasonably believes to be the imminent use of unlawful force. However, a person is justified in using deadly force only if he reason-

ably believes that that force is necessary to prevent serious bodily injury to himself or a third person or the commission of a forcible felony. No person in this state shall be placed in legal jeopardy of any kind whatsoever for protecting himself or his family by reasonable means necessary."

ed firearm, constitutes deadly force as referred to in the defense of property statute, Ind.Code § 35–41–3–2(c). However, in *Spurlock v. State,* 675 N.E.2d 312, 316 (Ind.1996), our supreme court concluded that pointing a loaded firearm at a police officer was sufficient evidence to support a conviction for criminal recklessness. "A person commits criminal recklessness when he recklessly, knowingly, or intentionally performs an act that creates a substantial risk of bodily injury to another person." *Id.* (citing Ind.Code § 35–42–2–2.). Thus, within the context of a charge of criminal recklessness, pointing a loaded firearm is considered an action that creates a substantial risk of bodily injury to another person. *See Id.*

Our supreme court has also held that brandishing an unloaded firearm can create a substantial risk of bodily injury. *Al–Saud v. State,* 658 N.E.2d 907, 910 (Ind. 1995). The *Al–Saud* court noted that: "The brandishing of a firearm in a congested area or during a dispute can create a variety of risks of bodily injury to others, regardless of whether the weapon is loaded." *Id.*

We find that these concerns equally apply to the case before the court. By pointing a loaded gun at Petro's head, Nantz created a variety of risks that could have lead to serious bodily injury. In *Upp v. State,* 473 N.E.2d 1030, 1032 (Ind.Ct.App. 1985), this court affirmed the defendant's conviction for criminal recklessness. In that case, Upp asserted the defense of property defense, and claimed that although he fired his gun several times, he was not trying to hit the trespasser in his back yard. *Id.* at 1031, 1032. We concluded that even assuming that Upp was not attempting to shoot the trespasser, his behavior still created a substantial risk of bodily injury because Upp could have missed his aim or a bullet could have

struck a stone, ricocheted and injured the trespasser. *Id* at 1032.

Although Nantz did not fire his handgun as the defendant did in *Upp,* by pointing the gun at Petro's head, the gun could have accidentally discharged or Petro could have grabbed the gun causing serious injury or death to one or both of these men. Further, under Ind.Code § 35–41–3–2(a), Petro may have arguably had the right to use deadly force to defend against Nantz's action of pointing a loaded firearm at him, creating a substantial risk of injury. " 'Permitting one to threaten to use deadly force leads in dangerous progression to an unacceptable conclusion. Here, the victim would have been entitled to use deadly force to repel the perceived threat.' " *Commonwealth of Virginia v. Alexander,* 260 Va. 238, 241, 531 S.E.2d 567, 569 (2000) (citation omitted).[4]

Consequently, we conclude that Nantz's conduct, pointing a loaded firearm at Petro's head, was unreasonable force to use to protect his alleged property interest in the bulldozer. Thus, Nantz failed to prove his defense of property defense. Therefore, we find that the evidence was sufficient to support his conviction for pointing a firearm, as a Class D felony.

## II.  Jury Instruction

■■■ Nantz contends that the trial court failed to properly instruct the jury as to the material elements of the crime of pointing a firearm, as a Class D felony. Specifically, Nantz contends that the jury was not instructed that the firearm had to be loaded in order to convict Nantz of a Class D felony. Because Nantz's trial counsel failed to object, Nantz asserts that the failure to properly instruct the jury as to the material elements of the crime is fundamental error. However, even though required by App.Rule 8.3(A)(7), Nantz fails to set forth verbatim the specific instruc-

---

**4.** The *Alexander* court thus held that a deadly weapon may not be brandished solely in the defense of property. *Id.; see also State v. Foster,* 191 Ariz. 355, 358, 955 P.2d 993, 996 (1998); *but see Diffendal v. Commonwealth,* 8 Va.App. 417, 421, 382 S.E.2d 24, 26 (1989) and *State v. Williams,* 433 A.2d 765, 769 (Me.1981).

tion to which he now objects. Nonetheless, we will address this issue on its merits.

Our review of the Record shows that the trial court included in its preliminary instructions read to the jury, the following instruction: "The statute defining the offense of pointing a firearm, which was in force at the time of the offense charged in count one, reads in relevant part as follows: ... [A] person who knowingly or intentionally, points a firearm at another person commits a Class D felony." (R. 253). The trial court also gave this same instruction as final instruction number four. (R. 132, 410). These instructions do not state that the firearm must be loaded to constitute a Class D felony.

However, the trial court's final instruction number twelve, specifically sets forth the elements of the crime, including that the firearm must be loaded to constitute a Class D felony. Final instruction number twelve reads as follows: [5]

The crime of pointing a firearm is defined by statute as follows:

A person who knowingly or intentionally points a firearm at another person commits a class D felony. However, the offense is a Class A misdemeanor if the firearm was not loaded.

To convict the defendant, the State must have proved each of the following elements:

The Defendant
(1) knowingly or intentionally
(2) pointed a firearm
(3) at [name] Don Petro

If the State failed to prove each of these elements beyond a reasonable doubt, you should find the Defendant not guilty.

If the Stated did prove each of these elements beyond a reasonable doubt, you should find the Defendant guilty of

pointing a firearm, a Class A misdemeanor.

If you further find beyond a reasonable doubt that the firearm was loaded, you should find the Defendant guilty of pointing a firearm, a Class D felony.[6]

(R. 141). The trial judge read this instruction to the jury as set forth above, excluding the marked out portions. (R. 412). Further, the trial court also included as part of the preliminary instructions and final instructions, as final instruction number three, a reading of the Information which states in pertinent part: "Paul Nantz did knowingly point a loaded firearm, specifically a loaded Ruger P-85 handgun, ... at another person, specifically, Don Petro..." (R. 131, 253, 410). Thus, the jury was instructed through final instruction three and twelve that Nantz was accused of pointing a loaded firearm at Petro and that the State was required to prove that the firearm was loaded to convict Nantz.

Nantz is correct in his contention that it is fundamental error for the trial court to fail to give an instruction setting forth all the elements of the offense. *Lacy v. State*, 438 N.E.2d 968, 971 (Ind.1982); *Higgins v. State*, 690 N.E.2d 311, 315 (Ind. Ct.App.1997), *reh'g denied*. However, in this case, there was not a total failure to give such an instruction, a fact apparently overlooked by Nantz. Final instruction number twelve, the elements instruction, sets forth all of the elements of the charged offense. While final instruction number three, which purports to set forth the statute, does not state that the firearm must be loaded to constitute a Class D felony, final instruction number twelve does included this element. Thus, the final instructions, when read together as a whole, instructed the jury on the necessary elements of the charged offense, pointing a

---

5. The marked out portions of this instruction were excluded by the trial court. The trial judge and both counsel initialed these changes.

6. Nantz asserts that the "loaded firearm" language in final instruction number twelve was stricken from this instruction. However, this assertion is factually incorrect.

firearm, as a Class D felony. *See Nicholson v. State*, 500 N.E.2d 1175, 1177 (Ind. 1986); *Jarrett v. State*, 580 N.E.2d 245, 252 (Ind.Ct.App.1991). Under these circumstances, we do not believe fundamental error occurred here.

## III. *Ineffective Assistance of Counsel*

Nantz argues that his trial counsel was ineffective for his failure to tender certain instructions. Specifically, Nantz asserts that his trial counsel should have submitted proposed instructions on the possessory lien statute and the citizen's arrest statute. Further, Nantz claims that his trial counsel was ineffective for his failure to object to the trial court's final instruction on the elements of the charge against him.

■ The standard by which we review claims of ineffective assistance of counsel is well settled. In order to prevail on a claim of this nature, a defendant must satisfy a two prong test: (1) a showing that counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms, and (2) a showing that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *State v. Moore*, 678 N.E.2d 1258, 1261 (Ind.1997) *reh'g denied, cert. denied* (citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

■ However, we need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052. To establish prejudice, Nantz must first demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would be different. *See Smith v. State*, 689 N.E.2d 1238, 1244 (Ind.1997). Isolated poor strategy or bad tactics do not necessarily amount to ineffective assistance of counsel unless, taken as a whole, the defense was inadequate. *Brown v.*

*State*, 698 N.E.2d 1132, 1139 (Ind.1998), *reh'g denied, cert. denied*. Furthermore, we "will not lightly speculate as to what may or may not have been an advantageous trial strategy as counsel should be given deference in choosing a trial strategy which, at the time and under the circumstances, seems best." *Whitener v. State*, 696 N.E.2d 40, 42 (Ind.1998).

### A. *Possessory Lien Statute*

■ Nantz claims that the evidence supported an instruction on the possessory lien statute, Ind.Code § 9–22–5–15, and his counsel was ineffective for failing to request one. A proposed instruction may be given if it is a correct statement of the law, it is supported by the evidence, it is not covered by another instruction, and it does not tend to mislead or confuse the jury. *See Barnard v. Himes*, 719 N.E.2d 862, 868 (Ind.Ct.App.1999), *trans. denied*.

The possessory lien statute states in pertinent part, "(a)n individual, ... that ... furnishes storage ... on a motor vehicle ... at the request of the person who owns the motor vehicle has a lien on the vehicle to the reasonable value of the charges for the ... storage ..." Ind.Code § 9–22–5–15(a). Nantz claims that the evidence supports an instruction on this statute because he stored Mahoney's bulldozer at Mahoney's request. Nantz contends that if this instruction had been given, the jury would have known that there was a legal basis for Nantz's possession of the bulldozer independent of Nantz's testimony.

Assuming for the sake of argument that this is correct, Nantz is nonetheless unable to show that he was prejudiced by his counsel's failure to request this instruction. Because we have determined that the amount of force used by Nantz to protect his alleged property interest in the bulldozer was unreasonable, the issue of whether or not he had a possessory interest in the bulldozer is moot. Consequently, Nantz was not prejudiced by his attorney's failure to request this instruction.

### B. Citizen's Arrest Statute

Nantz also argues that his trial counsel was ineffective by failing to request an instruction on the citizen's arrest statute. This statute provides in part that: "Any person may arrest any other person if: ... the other person committed a felony in his presence; ... or ... [if] a misdemeanor involving a breach of peace is being committed in his presence and the arrest is necessary to prevent the continuance of the breach of peace." Ind.Code § 35–33–1–4. Nantz argues that this instruction was supported by the evidence because he believed that Petro was committing felony theft by stealing the bulldozer, and thus, he had the right to attempt to arrest him. Nevertheless, Nantz's own testimony did not support the giving of this instruction. Nantz testified that he was waving the gun around and yelling at Petro to get off his property. (R. 365). At no time did Nantz testify that he was attempting to arrest Petro, instead Nantz made it clear that he was attempting to force Petro off his property. Thus, because Nantz was not attempting to make a citizen's arrest, an instruction on this statute was not supported by the evidence and would not have been given if tendered. See Barnard, 719 N.E.2d at 868.

Thus, Nantz's trial counsel was not ineffective for failing to tender an instruction on the citizen's arrest statute.

### C. Failure to Object to the Elements Instruction

Nantz also argues that his trial counsel was ineffective for failing to object to the trial court's final instruction on the elements of the charged offense. Since we have previously found herein that the elements instruction was proper, we conclude that Nantz's trial counsel was not ineffective for failing to object to this instruction.

### IV. Sentencing

Finally, Nantz asserts that the sentence he received as a result of his conviction was manifestly unreasonable in light of the nature of the offense and the character of the offender. Nantz was sentenced to a three-year term of imprisonment, which is the maximum possible sentence for a Class D felony. See Ind.Code § 35–50–2–7. Nantz concedes that the trial court properly enumerated all of the aggravating and mitigating factors in its sentencing order; however, he argues that the trial court did not properly weigh these factors. Specifically, Nantz asserts that under the circumstances of this case, it was unreasonable to give a man with his health problems the maximum sentence possible.

It is within the trial court's discretion to determine Nantz's sentence and thus, the trial court's sentence will be reversed only upon a showing of abuse of that discretion. See Ballard v. State, 715 N.E.2d 1276, 1279 (Ind.Ct.App.1999). "We will not revise a sentence that is authorized by statute unless the sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender. A sentence is manifestly unreasonable if no reasonable person could consider the sentence appropriate." Ladd v. State, 710 N.E.2d 188, 192 (Ind.Ct.App. 1999). We review cases under this rule with the knowledge that reasonable minds may differ on the appropriateness of a sentence, and due to the degree of subjectivity involved in the sentencing process, it is not appropriate for a reviewing court to substitute its opinion for that of the trial court. Id.

When enhancing a sentence, the trial court must identify all significant mitigating and aggravating circumstances. Johnson v. State, 725 N.E.2d 864, 867 (Ind. 2000). However, the weight to be given any one aggravating or mitigating factor is to be determined by the trial judge during sentencing. Ballard, 715 N.E.2d at 1279. One aggravating factor alone is sufficient to impose consecutive sentences and to enhance the presumptive sentence. Buzzard v. State, 712 N.E.2d 547, 554 (Ind.Ct. App.1999), trans. denied. Additionally, an enhanced sentence may be composed when

the only aggravating circumstance is the defendant's prior criminal history. *Isaacs v. State,* 673 N.E.2d 757, 765 (Ind.1996).

In its sentencing order, the trial court found the following aggravating factors: (1) Nantz had at least twelve prior misdemeanor convictions and one felony conviction; (2) the firearm was loaded and Nantz's actions created a substantial risk of serious bodily injury and death; (3) there is a substantial probability of future criminal activity; (4) there was a need for correctional treatment best conducted by a penal facility; (5) a lesser sentence would depreciate the seriousness of the crime; and (6) alcohol played a substantial role in Nantz's actions. (R. 189). The trial court further identified the following mitigating factors: (1) Nantz's extreme poor health and his age; (2) the fact that Nantz is a veteran; (3) that his incarceration will be a hardship to his wife; (4) that there were circumstances tending to justify his acts, although not rising to the level of a legal defense; (5) provocation; and (6) Nantz's behavior while incarcerated. (R. 189).

It is clear from the Record of the sentencing hearing and the sentencing order that the trial court thoughtfully considered and weighed all of these factors. As we have said, the weight to be given any one aggravating or mitigating factor is to be determined by the trial judge during sentencing. *Ballard,* 715 N.E.2d at 1279. We cannot replace our judgment for that of the trial court in determining what weight to assign these factors. Accordingly, we conclude that the trial court's sentence was reasonable.

## CONCLUSION

Based on the foregoing, we conclude that there is sufficient evidence to support Nantz's conviction for pointing a firearm, as a Class D felony. We further find that the jury was properly instructed and that Nantz did not receive ineffective assistance of trial counsel. Finally, we conclude that Nantz was properly sentenced.

Affirmed.

DARDEN, J., and ROBB, J., concur.